# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Thomas Schumacher and
Radonna Schumacher,                                    Civil No. 15-549 (DWF/HB)

                    Plaintiffs,

v.                                                     **MEMORANDUM**
                                                       **OPINION AND ORDER**
State Farm Mutual Automobile
Insurance Company,

                    Defendant.

---

Anne Greenwood Brown, Esq., Sjoberg & Tebelius, PA, counsel for Plaintiff.

Brent D. Kettelkamp, Esq., C. Todd Koebele, Esq., and Scott G. Williams, Esq., HKM
Law Group, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant State Farm Mutual Automobile

Insurance Company's ("State Farm") Motion for Summary Judgment.  (Doc. No. 12.)

For the reasons set forth below, the Court grants State Farm's motion.

## BACKGROUND

## I.      Factual Background

This insurance coverage dispute arises from a car accident that occurred on

July 17, 2009.  (Doc. No. 1, Ex. 1 ("Compl.") ¶ 5.)  Plaintiff Thomas Schumacher

("Schumacher") was rear-ended twice by Tamara Reed ("Reed"), who was driving a

vehicle owned by Cynthia Jean Schumacher ("C.J. Schumacher") (no relation).  (*Id.*)  At

the time of the accident, Schumacher had an automobile insurance policy with

Defendants State Farm with an Underinsured Motorist (UIM) coverage limit of $250,000.

(*Id.* ¶ 3.)  Both Reed and C.J. Schumacher had liability insurance policies from American

Family totaling $200,000.[1]  (Doc. No. 17 ("Brown Aff.") ¶¶  2, 7.)  As a result of the

accident, Schumacher suffered physical and psychological injuries, as well as lost wages,

purportedly totaling nearly $500,000.  (Brown Aff. ¶  3, Ex. A ("Settlement Demand") at

5.)  Plaintiff Radonna Schumacher ("R. Schumacher") also claimed loss of consortium.

(Doc. No. 15 ("Williams Aff.") ¶ 3, Ex. B ("*Malmin* Notice") at 1.)

On February 23, 2012, Schumacher sent a Settlement Demand Letter to American

Family, indicating an intent to initiate litigation against both Reed and C.J. Schumacher

on theories of negligence and vicarious liability.  (Settlement Demand at 4, 6.)  The

Settlement Demand Letter noted that the demand was "subject to the underinsured

motorist carrier's right of substitution."  (*Id.* at 6.)  The letter explained, "Pursuant to

*Schmidt v. Clothier*, we must allow 30 days for the No Fault carrier, State Farm, to

respond to American Family's settlement offer."  (*Id.*)  The Defendants in the underlying

litigation did not respond with a settlement offer.  (Brown Aff. ¶ 4.)

The Schumachers subsequently commenced a lawsuit against Reed and C.J.

Schumacher and sent State Farm a litigation notice on November 22, 2013.  (*Malmin*

Notice at 2.)  The notice stated:

---

[1]     Schumacher was initially unaware that Reed was covered by American Family
with a $100,000 liability insurance policy.  (Brown Aff. ¶ 2, 7.)  The Court finds this fact
immaterial for purposes of the present litigation.

> You are hereby placed on notice pursuant to *Malmin v. Minnesota Mutual Fire & Casualty*, 552 N.W.2d 723 (Minn. 1996) and *Butzer v. Allstate Ins. Co.*, 567 N.W.2d 534 (Minn. Ct. App. 1997) that Plaintiffs have commenced suit against Defendants.  It will be their intent to bind you, the underinsured motorist carrier, to any decision by the trial court should Plaintiffs exceed the Defendant Schumacher's $100,000 policy limits.  Pursuant to *Malmin*, you have the right to intervene in the trial.

(*Id.*)  State Farm did not intervene in the underlying litigation.

On February 18, 2014, the parties to the underlying litigation "agree[d] to submit the . . . matter in controversy . . . to binding arbitration."  (Williams Aff. ¶ 4, Ex. C ("Arbitration Agreement") at 1.)  The Arbitration Agreement stated:

> The parties understand that they have a right to a jury trial but waive that right in favor of binding high/low arbitration to determine damages, if any.  It is further understood and agreed that Plaintiffs may have a right to collect underinsured motorist coverage from their insurance carrier should the net award of the arbitration exceed the limit of liability insurance coverage provided to Defendants and that by agreeing to binding arbitration Plaintiffs do not give up the right to receive underinsured motorist coverage.

(*Id.*)  The Arbitration Agreement also included provisions stating that "Defendants admit liability and the parties agree that the arbitrator shall determine Plaintiffs' damages" and "[t]he arbitrator's final decision shall show the amount of damages awarded, if any."  (*Id.*)  The parties also agreed that "[t]he Arbitrator shall be the sole judge of all issues of law and fact" and "[t]here is no right of appeal from any decisions other than claims of fraud or breach of this agreement."  (*Id.* at 2.)  Exhibit A to the Arbitration Agreement stated:

> Nothing in this Exhibit or this Agreement is intended to limit Plaintiffs right to proceed in an action against their own UIM carrier, except to the extent so limited by law.  Regardless of the amount of damages awarded, if any, Plaintiffs shall release Defendants and American

> Family from any further liability after the Schmidt v. Clothier notice
> period.

(Brown Aff. ¶ 5, Ex. B at 4.)

On February 20 and 27, 2014, the parties to the underlying litigation participated in arbitration. (Williams Aff. ¶ 5, Ex. D ("Arbitration Award") at 2.) All parties were represented in the arbitration proceedings. (*Id.*) The parties provided "extensive written materials" to the arbitrator, and five witnesses testified live along with one witness testifying by deposition. (*Id.*) According to the arbitrator's memorandum, "[b]oth attorneys did an excellent job representing their respective clients and zealously arguing the merits of the case." (*Id.*) On March 27, 2014, the arbitrator issued a "Binding Arbitration Award" awarding the Schumachers a net award of $125,250 "as damages directly resulting from the motor vehicle accident of July 17, 2009." (Arbitration Award at 1.)

The Schumachers characterize the arbitration proceedings as a "best settlement" resolution of the Schumachers' claims in the underlying litigation. (Brown Aff. ¶ 4.) On April 4, 2014, the Schumachers sent a notice to State Farm "pursuant to *Schmidt v. Clothier* to advise State Farm that Thomas Schumacher will accept American Family's policy limits, subject to the State Farm's right to substitute funds." (Williams Aff. ¶ 6, Ex. E ("First *Schmidt* Notice") at 2.) The notice advised State Farm that "Mr. Schumacher intends to pursue a claim for his UIM policy limit." (*Id.*) State Farm did not respond to this notice. (Brown Aff. ¶ 6.)

The Schumachers subsequently learned that American Family had an additional $100,000 available under a policy covering Reed.  (Williams Aff. ¶ 7, Ex. F ("Second *Schmidt* Notice") at 2; Brown Aff. ¶ 7.)  On June 5, 2014, the Schumachers sent a second notice to State Farm, notifying State Farm that "in light of the settlement arrived at through arbitration" the Schumachers intended to accept $100,000 from C.J. Schumacher's policy and an additional $25,000 from Reed's policy.  (*Id.*)  This second notice again advised State Farm that "Mr. Schumacher intends to pursue a claim for his UIM policy limit."  (*Id.*)  On June 13, 2014, State Farm responded to the notice, stating "If your client is agreeing to settle for $125,000 out of the $200,000 available, then we will not substitute funds."  (Brown Aff. ¶ 9, Ex. C at 1.)  In this response, State Farm also explained that "[b]ased on the arbitration decision, it is our position that there would be no Underinsured Motorist claim."  (*Id.*)

On February 3, 2015, the Schumachers filed this lawsuit against State Farm in Washington County, Minnesota.  (Compl.)  On February 19, 2015, State Farm removed the action to this Court.  (Doc. No. 1.)  In their Complaint, the Schumachers assert that "[t]he Schumachers' actual damages arising from the July 17, 2009 crashes are in excess of settlement and exceed $500,000."  (Complaint ¶ 15.)  The Schumachers seek a judgment against State Farm for $250,000, their full UIM policy limit.  (*Id.* at 5.)  Specifically, they assert the following claims:  (I) breach of contract, (II) unjust enrichment, and (III) promissory estoppel.  (*Id.* at 3-5.)  In its Amended Answer, State Farm "alleges that Plaintiffs' claimed damages and injuries were submitted to binding arbitration and that the award precludes and extinguishes Plaintiffs' underinsured

5

motorist claim as a matter of law." (Doc. No. 7 ¶ 24.) State Farm now moves for

summary judgment and asks the Court to dismiss the Schumachers' Complaint with

prejudice. (Doc. No. 12.)

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the

light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d

885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive

determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

(quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna*

*Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate

the existence of specific facts in the record that create a genuine issue for trial. *Krenik v.*

*Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly

supported motion for summary judgment "may not rest upon mere allegation or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.      State Farm's Motion for Summary Judgment

State Farm argues that the Schumachers' are collaterally estopped from relitigating damages because the amount of damages available to the Schumachers was already determined in the prior arbitration proceeding.  As a result, State Farm contends, the Schumachers are entitled to no more than the amount awarded by the arbitrator—$125,250—and have no claim for UIM coverage.

### A.      Collateral Estoppel

A federal district court "must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'"  *Mandich v. Watters*, 970 F.2d 462, 465 (8th Cir. 1992) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)).  In Minnesota, collateral estoppel applies to bar relitigation of an issue if four elements are met.  *See Ryan v. Progressive Cas. Ins. Co.*, 414 N.W.2d 470, 472 (Minn. Ct. App. 1987) (citing *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982)).  First, the issue must be "identical to one in a prior adjudication."  *Id.*  Second, there must have been "a final judgment on the merits."  *Id.*  Third, the estopped party must have been "a party or in privity with a party to the prior adjudication."  *Id.*  Fourth, the estopped party must have been "given a full and fair opportunity to be heard on the adjudicated issue."  *Id.*  Collateral estoppel should not be rigidly applied.  "As a flexible doctrine, 'the focus is on whether its application would work an injustice on the party against whom estoppel is urged.'"  *Houlihan v. Fimon*, 454 N.W.2d 633, 635 (Minn. Ct. App. 1990) (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613-14 (Minn. 1988)).

### 1.      Identical Issue

The first element of collateral estoppel requires that the issue be "identical to one in a prior adjudication." *Ryan*, 414 N.W.2d at 472.  The Schumachers seek to litigate the issue of damages in order to pursue a claim for their full UIM limit.  The Schumachers allege that "[t]he aggregate amount of the Schumachers' damages as a result of Thomas's serious and permanent injuries caused by Reed's negligence is in excess of $500,000.00." (Compl. ¶ 12.)  The record demonstrates that the damages the Schumachers are asking this Court to determine are the identical damages previously considered by the arbitrator in the underlying litigation.  The Court therefore concludes that this element of collateral estoppel is met.

### 2.      Final Judgment on the Merits

The second element of collateral estoppel requires "a final judgment on the merits." *Ryan*, 414 N.W.2d at 472.  State Farm argues that "[t]he binding arbitration and Plaintiffs' subsequent resolution and dismissal of their lawsuit constitute a final judgment on the merits." (Doc. No. 14 at 13.)  Under Minnesota law, "[a] final arbitration award has the same preclusive effect as a prior judgment." *Manion v. Nagin*, 392 F.3d 294, 300 (8th Cir. 2004) (citing *U.S. West Fin. Servs., Inc. v. Buhler, Inc.*, 150 F.3d 929, 932 (8th Cir. 1998)); s*ee also Mandich*, 970 F.2d at 465 ("It is now settled in Minnesota that an arbitration award is a prior adjudication for collateral estoppel purposes.") (citing *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn. 1990)).  It is particularly appropriate to give preclusive effect to an arbitration award "where the estopped party sought the arbitration." *Houlihan*, 454 at 636.  Minnesota's decision to afford preclusive

effect to arbitration proceedings rests on the state's policy preferences favoring alternative dispute resolution and judicial efficiency.  *Cf. Aufderhar*, 452 N.W.2d at 653 (noting the Minnesota Supreme Court's "traditional encouragement of alternative forms of dispute resolution, as well as policies designed to promote judicial efficiency").

In *Butzer v. Allstate Insurance Co.*, 567 N.W.2d 534 (Minn. Ct. App. 1997), the Minnesota Court of Appeals considered a case with facts very similar to this case.  After entering into binding arbitration, a motorist sought to recover UIM coverage against his UIM insurance carrier.  *Id.* at 536.  The insurance carrier brought a motion for summary judgment on the issue of damages, alleging that the motorist was estopped from claiming damages in an amount greater than the arbitrator's award.  *Id.*  The trial court granted the motion, and the Minnesota Court of Appeals affirmed.  *Id.* at 536, 538.  Citing numerous cases in which Minnesota courts suggested "that collateral estoppel applies both to trial court judgments and to prior arbitrations," the Minnesota Court of Appeals held that "[w]hen injured motorists obtain an arbitration award against the tortfeasors or the tortfeasors' liability insurer, the arbitral decision may collaterally estop both the injured drivers and their underinsured motorist carriers from relitigating the damages issue."  *Id.* at 536.  In reaching this conclusion, the court noted that the motorist's proposed resolution would "encourag[e] duplicative proceedings to determine the amount of damages" and "likely would create an overall increase in litigation on identical issues."  *Id.* at 537.  In short, the court concluded "[a]n arbitration produces a legal entitlement to underinsured benefits no different from a judgment following a jury verdict."  *Id.* at 538.

The Court concludes that there was a final judgment on the merits in the underlying litigation.  The parties below "agree[d] to submit the . . . matter in controversy . . . to binding arbitration" and waived their right to a jury trial.  (Arbitration Agreement at 1.)  The arbitrator was to be "the sole judge of all issues of law and fact," and the parties agreed there would be "no right of appeal . . . other than claims of fraud or breach of [the Arbitration Agreement]."  (*Id.* at 2.)  Both Minnesota caselaw and the record before the Court support the conclusion that the arbitrator's award was a final judgment on the merits for collateral estoppel purposes.

### 3.     Same Party or In Privity

The third element of collateral estoppel requires that the estopped party must have been "a party or in privity with a party to the prior adjudication."  *Ryan*, 414 N.W.2d at 472.  It is undisputed that Thomas and Radonna Schumacher were parties to the arbitration proceedings in the underlying litigation and are now the Plaintiffs in this case. The Court concludes that this element of collateral estoppel is met.

### 4.     Full and Fair Opportunity To Be Heard

Finally, the estopped party must have been "given a full and fair opportunity to be heard on the adjudicated issue."  *Id.*  The Schumachers were represented by counsel in the arbitration proceedings below and presented voluminous documentary evidence to the arbitrator.  Over the course of a two-day arbitration proceeding, the arbitrator heard testimony from five live witnesses and received testimony from another witness in the form of a deposition.  The arbitrator specifically noted the competence of all counsel and deemed the representation of the parties to be zealous.  There is no evidence to suggest

that the Schumachers had any incentive not to fully and zealously argue the issue of damages to the arbitrator. The record amply supports the conclusion that the Schumachers were given a full and fair opportunity to be heard on the issue of damages in the arbitration proceeding.

Because the Court concludes that all four elements of collateral estoppel are met, the Plaintiffs are barred from relitigating the issue of damages in this case.

### B.  Underinsured Motorist Coverage

Minnesota law defines "underinsured motorist coverage" as "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles." Minn. Stat. § 65B.43, subd. 19. An "underinsured motor vehicle" is defined as "a motor vehicle . . . to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." *Id.* § 65B.43, subd. 17. Underinsured motorist coverage is designed for situations where an injured person cannot fully recover amounts to which he is legally entitled from a tortfeasor's insurance coverage alone. *See Emp'rs Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 856 (Minn. 1993) (describing UIM coverage as "excess coverage over the liability limit that would be available when damages were uncompensated merely because the tortfeasor carried inadequate liability insurance" (quoting *Johnson v. Am. Family Mut. Ins. Co.*, 426 N.W.2d 419, 422 (Minn. 1988))).

Given the Court's determination that collateral estoppel bars the Schumachers from relitigating damages in this case, the Schumachers are legally entitled to no more

than what the arbitrator awarded—a net award of $125,250.  The tortfeasors' liability policies totaling $200,000 provide the Schumachers with adequate coverage to compensate for their damages as determined by the arbitrator.  As a matter of law, the Schumachers cannot now pursue UIM coverage by seeking a greater award in this case. Therefore, the Court grants State Farm's Motion for Summary Judgment and dismisses the Schumachers' claims with prejudice.

## III.    The Schumachers' Response to State Farm's Motion for Summary Judgment

The Schumachers argue that State Farm has mischaracterized the nature of the arbitration proceedings by claiming that they were intended to fully and finally resolve the tort action against Reed and C.J. Schumacher in the underlying litigation.  Instead, the Schumachers claim that the arbitration was intended as a "best settlement" resolution between the parties.  Understood in this manner, the Schumachers argue, the arbitration award has no collateral estoppel effects for the present litigation.

Under Minnesota law, an arbitration proceeding in a motor vehicle accident dispute may be characterized as one of two proceedings:

> (1) a tort action pursued to a conclusion in a district court action, in which case the underinsurer was entitled to notice pursuant to *Malmin v. Minnesota Fire & Casualty Co.*, 552 N.W.2d 723 (Minn. 1996); or (2) an effort to arrive at a settlement agreement between the injured claimant and the tortfeasors, in which case the underinsurer was entitled to notice of the proposed settlement and an opportunity to substitute payment to the claimant pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983), *superseded by statute on other grounds*, Minn. Stat. § 65B.49, subd. 4a (2006), *as recognized in Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 603 (Minn. 2001).

*George v. Evenson*, 754 N.W.2d 335, 336-37 (Minn. 2008).  If the arbitration is the conclusion of a tort action, the insured is entitled to the amount awarded by the arbitrator and no more due to collateral estoppel.  *See Butzer*, 567 N.W.2d at 538.  If the arbitration is merely intended as a "best settlement" resolution between the injured party and the tortfeasor, however, the injured party retains the right to pursue UIM benefits from his insurer beyond the settlement amount.  *See Schmidt v. Clothier*, 338 N.W.2d 256, 262 (Minn. 1983), *superseded by statute on other grounds*, Minn. Stat. § 65B.49, subd. 4a (2006), *as recognized in George v. Evenson*, 754 N.W.2d 335, 337 (Minn. 2008).  "[A]n insured must characterize an arbitration award as either a settlement or a conclusion of a tort action and may not rely on both characterizations when pursuing UIM benefits." *Kluball v. Am. Family Mut. Ins. Co.*, 706 N.W.2d 912, 916 (Minn. Ct. App. 2005).

Minnesota courts have looked to principles of contract interpretation to determine whether an arbitration agreement was intended as the conclusion of a tort action or a "best settlement" between the parties.  *See e.g.*, *George*, 754 N.W.2d at 341; *Strong v. Lange*, No. A13-1886, 2014 WL 1517415, at *3 (Minn. Ct. App. Apr. 21, 2014).  Courts must seek to give effect to the intention of the parties in enforcing its terms.  *See George*, 754 N.W.2d at 341 ("We interpret an arbitration agreement 'to give effect to the intention of the parties as expressed in the language they used in drafting the whole [agreement].'") (internal citation omitted).  If a contract is ambiguous, extrinsic evidence may be used to discern its meaning and the interpretation of the contract is a question of fact.  *See Murray v. Puls*, 690 N.W.2d 337, 343 (Minn. Ct. App. 2004).  If a contract is

unambiguous, the interpretation of the contract is a question of law for the court.  *See id.*

"Whether a contract is ambiguous is a question of law."  *Id.*

In this case, the Court concludes that the Arbitration Agreement in the underlying

litigation unambiguously demonstrated the parties' intent to enter into a binding

agreement to conclude the tort action.  The parties agreed to waive their right to a jury

trial "in favor of binding high/low arbitration to determine damages."  (Arbitration

Agreement at 1.)  The parties agreed that the Schumachers "may have a right to collect

underinsured motorist coverage from their insurance carrier should the net award of the

arbitration *exceed* the limit of liability coverage provided to [Reed and C.J.

Schumacher]."  (*Id.* (emphasis added).)  The parties agreed that "[t]he arbitrator's final

decision shall show the amount of damages awarded, if any."  (*Id.*)  The parties also

agreed that "[t]he Arbtirator shall be the sole judge of all issues of law and fact" and

"[t]here is no right of appeal from any decisions other than claims of fraud or breach of

this agreement."  (*Id.* at 2.)

Minnesota courts have considered arbitration agreements where the parties used

words such as "tantamount to a settlement offer" or "binding best settlement

determination" in their arbitration agreement.  *See George*, 754 N.W.2d at 341; *Strong*,

2014 WL 1517415, at *1.  In one case, the parties' agreement explicitly stated that the

agreement would preserve the insured's rights "without res judicata or estoppel effects."

*George*, 754 N.W.2d at 341.  Here, the Arbitration Agreement contained no such similar

language demonstrating an intent to enter into a settlement or an intent to avoid

preclusion by the arbitrator's award.  Nowhere in the Arbitration Agreement do the

parties use the word "settle," "settlement," or "best settlement."  Instead, the language of the Arbitration Agreement demonstrates that the parties would be bound by the arbitrator's final decision.  The Court concludes that the language in the Arbitration Agreement unambiguously expresses the parties' intention to fully and finally resolve the tort claim between the parties in the underlying litigation.  Contrary to the Schumachers' subsequent characterization, the Arbitration Agreement did not reflect an agreement to enter into a best settlement resolution.

The Schumachers point to a clause in Exhibit A to the Arbitration Agreement to support their claim that the Arbitration Agreement was intended as a "best settlement." The clause references *Schmidt v. Clothier*, the Minnesota case governing notice requirements in a "best settlement" scenario.  It states, "Regardless of the amount of damages awarded, if any, Plaintiffs shall release Defendants and American Family from any further liability after the Schmidt v. Clothier notice period."  (Brown Aff. ¶ 5, Ex. B at 4.)  The Minnesota Court of Appeals interpreted an arbitration agreement with a similar clause in *Butzer v. Allstate Insurance Co.* and determined that the clause had "no legal significance" because "the legal effect of a *Schmidt* notice is confined to circumstances where the parties propose to settle the claim against the tortfeasor." *Butzer*, 567 N.W.2d at 538.  An insured may not rely on both characterizations when pursuing their insurance claim.  *See Kluball*, 706 N.W.2d at 916.  A single reference to *Schmidt* in an otherwise unambiguous Arbitration Agreement does not transform the arbitrator's award from the conclusion of a tort action into a "best settlement" resolution and cannot allow the parties to avoid the collateral estoppel effects of the arbitrator's

binding award.  The Court concludes that the Arbitration Agreement is not ambiguous and the arbitrator's award was a final, binding resolution of the underlying litigation that should preclude relitigation of damages in this case.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. [12]) is **GRANTED** and Plaintiffs' Complaint (Doc. No. [1, Ex. 1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  October 20, 2015                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge